

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MANNY L. NOTTINGHAM | CIVIL ACTION |
| VERSUS | NO: 07-4211 |
| MURPHY OIL USA, INC., ET AL | SECTION: "S" (4) |

## ORDER AND REASONS

The motion for partial summary judgment (Doc. # 13) by defendants Murphy Oil USA, Inc. and Murphy Exploration & Production Company (collectively, "Murphy") is **DENIED**.

## BACKGROUND

This matter is being brought under Rule 9(h) under the Jones Act, 46, U.S.C. §688, *et seq;* Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 133 U.S.C. §901, *et seq;* general maritime law; and alternatively, under 33 U.S.C. §901, et seq., 905(b), and the Outer Continental Shelf Act and/or Suits in Admiralty Act, §2 ("OCSA"), 46 U.S.C. §742.

On May 14, 2007, plaintiff Manny L. Nottingham was employed by Baker Energy as an electrical instrumentation specialist aboard the MEDUSA SPAR, a tension rig and vessel, anchored in the Mississippi Canyon Block, and owned and operated by Murphy. Plaintiff alleges that he was injured while sitting in a lifeboat which dropped suddenly to the surface of the water during a regularly scheduled safety exercise, injuring the plaintiff's back, ribs and various soft tissues.
___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

Plaintiff alleges that the workers involved in the lowering of the lifeboat were Murphy employees, agents, subcontractors or borrowed servants for whom Murphy is vicariously liable, and that the sudden drop was caused by the negligence of Murphy, through its failure to train and to employ proper safety procedures, and by the unseaworthiness of the MEDUSA and the lifeboat.

Defendant Murphy moves for partial summary judgment, seeking dismissal of plaintiff's Jones Act and LHWCA claims because the MEDUSA is not a vessel because she is permanently secured to the seabed of the Gulf of Mexico and incapable of marine transportation. Further, Murphy argues that plaintiff's claim does not fall within the court's admiralty jurisdiction because plaintiff's accident at a situs covered by the OCSLA.

## ANALYSIS

### 1. Legal Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[1] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[2]

### 2. "Vessel"

Plaintiff's ability to recover under either the Jones Act or the LHWCA depends upon whether

---

[1] *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[2] *Celeotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

the MEDUSA is a "vessel," a term which is not defined in the Jones Act or the LHWCA.[3] The courts have relied upon 1 U.S.C. §3, where a "vessel" is defined to include "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."

In *Stewart v. Dutra Construction Co.*, 543 U.S. 481 (2005), the Supreme Court, relying on §3, held that a "vessel" "is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment."[4] The Court specifically found that to qualify as a "vessel," it was unnecessary that the watercraft in question be used "primarily" for transportation on water, or even be in motion or transit at the time of the accident.[5] The Fifth Circuit interpreted *Stewart* as signaling a "significant broadening of the set of unconventional watercraft that must be deemed vessels"[6] and recognized that the Supreme Court's analysis in *Stewart* of the term "vessel" applies equally to both the Jones Act and the LHWCA.[7]

Prior to *Stewart*, the Fifth Circuit instructed that the more attributes of a traditional vessel a waterborne structure had, the more likely it would be deemed a "vessel."[8] Such attributes included: 1) navigational aids, 2) life boats and other life-saving equipment, 3) raked bow, 4) bilge pumps, 5)

---

[3]*Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 298 (5th Cir. 2008).

[4]*Stewart*, 543 U.S. at 497 (holding that dredge was "vessel" for purposes of Jones Act).

[5]*Stewart*, 543 U.S. at 495.

[6]*Holmes v. Atl. Sounding Co., Inc.*, 437 F.3d 441, 448 (5th Cir. 2006)(holding that unpowered floatable quarterbarge used as dormitory for workers was vessel).

[7]*Cain*, 518 F.3d at 298; *Holmes*, 437 F.3d at 448.

[8]*Gremillion v. Gulf Coast Catering, Inc.*, 904 F.2d 290, 293 (5th Cir. 1990).

3

crew quarters, and 6) registration with the coast guard as a vessel.[9]

Although whether an unconventional craft is a vessel is an issue that is generally resolved as a matter of law, "at the margin, fact issues may be presented."[10]

Defendant argues that the MEDUSA is not a vessel, and attaches the affidavit of Perry Sawyer, Murphy's operations coordinator for the MEDUSA, who attests that since August 2003, the MEDUSA has been moored permanently; that since the permanent mooring, the MEDUSA has not moved; and that Murphy has no intention of moving the facility during its useful life.

Plaintiff argues that the MEDUSA and the lifeboat are "vessels," and attaches excerpts of various transcripts of depositions and documents, which demonstrate vessel characteristics for both the MEDUSA and the lifeboat. Mark LeBouef, a crew member of the MEDUSA, testified that the MEDUSA was a floating spar structure which navigates around a well pattern. According to LeBouef, the MEDUSA was classified by the U.S. Coast Guard as an "industrial vessel," and its manual states that she had a "Transit Mode" which allowed the structure to be towed. LeBoeuf testified that the lifeboat in which plaintiff was injured had an 80-passenger capacity, rations, a bilge pump, compass, search light and a medical kit, and that the plaintiff was part of the lifeboat crew.

The court finds that both the MEDUSA and the lifeboat possess some vessel characteristics, and that under *Stewart*'s expansive definition of "vessel," fact-intensive questions of material fact exist as to whether the MEDUSA and the lifeboat can be considered "vessels" for purposes of the Jones Act and the LHWCA. The existence of the material questions of fact preclude summary

---

[9]*Holmes*, 437 F.3d at 446; *Gremillion*, 904 F.2d at 293.

[10]*Holmes*, 437 F.3d at 445(*quoting Manuel v. PAW Drilling & Well Serv.*, 135 F.3d 344, 347 (5th Cir. 1998)).

judgment.

The motion for partial summary judgment seeking dismissal of plaintiff's Jones Act and LHWCA claims is **DENIED.**

**3. Admiralty or OCSLA Claim**

The OCSLA provides that courts should apply the law of the adjacent state as surrogate federal law to the extent that it is not inconsistent with federal laws.[11] For state law to apply under OCSLA, three conditions must be met: 1) the controversy must arise on a situs covered by the OCSLA (i.e., the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); 2) federal maritime law must not apply of its own force; and 3) the state law must not be inconsistent with federal law.[12] A physical connection with the OCSLA situs is not a rigid rule.[13] Further, whether a maritime nexus exists is a fact-intensive inquiry.[14]

Murphy maintains that the MEDUSA is not a vessel, and that even if the MEDUSA is considered a "vessel," that federal maritime law does not apply to this accident because the MEDUSA does not exist for any purpose related to traditional maritime activity or commerce.

The reasoning of *Bonnette v. Shell Offshore, Inc.*, 838 F. Supp. 1175 (S.D. Tex. 1993)

---

[11] 43 U.S.C. §1333(a)(2)(A); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969).

[12] *Grand Isle Shipyard, Inc., v. Seacor Marine, LLC*, 543 F.3d 256, 258 (5th Cir. 2008)(*citing Union Texas Petroleum Corp., v. PLT Engineering, Inc.*, 895 F.2d 1043 (5th Cir. 1990)). In *Grand Isle*, the Fifth Circuit held that OCSLA did not apply to vessel used to transport workers from an offshore platform to a residential platform. *Grand Isle Shipyard, Inc.*, 543 F.3d at 256.

[13] *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1527 (5th Cir. 2008); *Grand Isle Shipyard*, 543 F.3d at 262.

[14] *See e.g., Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973), *cert. denied sub nom, Chicot Land Co., Inc. v. Kelly*, 416 U.S. 969 (1974) and *Molett v. Penrod Drilling Co.*, 826 F.2d 1419 (5th Cir. 1987).

persuasive. In holding that maritime law applied to a suit brought by platform workers who were injured when an escape capsule fell from the platform during an emergency drill, the court said:

> There is also no doubt that the maritime law is concerned with the ability of seamen to escape their ships in emergencies. ... The use of lifeboats and the execution of lifeboat and man-overboard drills are an essential part of maritime activity. ... The question is whether a lifeboat drill retains is maritime character when it is carried out from an artificial island by workers who are not seamen, but oilmen. ... This court believes that it does. ... This court is of the opinion that under these facts, the line between OCSLA and maritime jurisdiction should be drawn at the point at which the platform workers take on the role of operators of the escape capsule. ...[15]

The evidence presented suggests that the lifeboat safety drill during which plaintiff was injured is an essential maritime activity. Murphy is not entitled to summary judgment that this court lacks admiralty jurisdiction in this case.

The motion for partial summary judgment by Murphy Oil USA, Inc. and Murphy Exploration & Production Company is **DENIED**.

New Orleans, Louisiana, this 6 day of January, 2009.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE

---

[15] *Bonnette*, 838 F. Supp. at 1185-86 (citations omitted).